UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KAYLA G., : | |
|     Plaintiff, : | |
| : | |
|     v. : | C.A. No. 21-443PAS |
| : | |
| KILOLO KIJAKAZI, : | |
| Acting Commissioner of Social Security, : | |
|     Defendant. : | |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On September 17, 2019, Plaintiff Kayla G., a "younger individual," applied for Supplemental Security Income ("SSI") under § 1631(c)(3) of the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g), 1383(c)(3); this application is Plaintiff's third.[1] Plaintiff is a high school graduate with some college and prior work at a laundromat and with children. She last worked in 2014. For the current application, Plaintiff alleges that she became disabled on September 17, 2019, due to the combined effect of physical impairments (fibromyalgia, polycystic ovary syndrome ("PCOS"), hidradenitis suppurativa, orthostatic hypertension, tachycardia, gastritis, recuring anal fistulas, asthma, sleeping problems, foot problems and bilary dyplasia) and mental impairments (bipolar disorder, social anxiety and post-traumatic stress disorder ("PTSD")). Alleging that the "biggest issue is [her] anxiety," Tr. 42, 58-59, Plaintiff claims that, other than going out for medical care, she spends her days in bed watching television, Tr. 48, although she also told one treating provider that "she has a 10 yr old step son who she cares for during the week." Tr. 1131.

---

[1] Both of Plaintiff's prior applications appear to have been denied based on decisions issued by administrative law judges. Tr. 74-86, 97-110, 117.

An administrative law judge ("ALJ") found that Plaintiff suffers from an array of severe impairments (fibromyalgia/chronic pain syndrome, obesity, anxiety, PTSD and substance abuse), but that she retains the physical RFC[2] to perform light work, with additional limits on standing and walking, as well as postural and environmental limits; and the mental RFC to perform uncomplicated work, with occasional interaction with the public and supervisors, no frequent interaction with coworkers, and no more than occasional changes in the work setting.  Tr. 17.  Based on this RFC, which a vocational expert opined permitted such jobs as assembler and table worker, Plaintiff's application was denied.

Now pending before the Court is Plaintiff's motion for reversal of the decision of the Acting Commissioner of Social Security ("Commissioner") denying her application.  ECF No. 10.  Defendant Kilolo Kijakazi ("Defendant") has filed a counter motion for an order affirming the Commissioner's decision.  ECF No. 13.  The case is before me on consent pursuant to 28 U.S.C. § 636(c).

**I.     Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by substantial evidence and that Commissioner correctly applied the law, the ALJ's

---

[2] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 416.945(a)(1).

decision must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30. The Court may not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31. "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015).

## II.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 416.905. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 416.905-911.

### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work

activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 416.920(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 416.920(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 416.920(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to SSI claims).

      **B.**    **Opinion Evidence**

The ALJ must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 416.920c. The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 416.920c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 381, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019). Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017). Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding. See 20 C.F.R. §

416.920c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859. "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion." Id. at 5854.

  C.  **Reliance on Experts**

An ALJ cannot render a medical opinion in the face of conflicting and inconsistent medical evidence without the assistance of a medical expert. Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991) ("[A]n expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person."). If the medical evidence is such that a "'reasonable mind might accept [it] as adequate to support a conclusion'" of disability, the ALJ cannot rest on his untutored lay analysis to interpret it otherwise. Sherry B. v. Saul, C.A. No. 20-140-JJM-PAS, 2021 WL 508517, at *2 (D.R.I. Feb. 11, 2021) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). However, a medical expert's testimony is not substantial evidence and cannot be relied upon if he was not "'privy to parts of [plaintiff's] medical record [which] detracts from the weight that can be afforded [his] opinions.'" Ruben M. v. Saul, C.A. No. 19-119MSM, 2020 WL 39037, at *9 (D.R.I. Jan. 3, 2020), adopted, 2020 WL 555186 (D.R.I. Feb. 4, 2020) (quoting Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *2-3 (D.R.I. Sept. 30, 2018)) (alterations in original). In particular, an ALJ cannot rely on a medical expert's opinion if the expert did not see documents indicating that the claimant's condition is different from what the expert found based on what he did see. Virgen C., 2018 WL 4693954, at *3. If the "[c]ourt does not know whether the non-examining state agency physicians would have rendered the same . . . opinions if they had all of the medical evidence," remand is necessary. Mary K v.

5

Berryhill, 317 F. Supp. 3d 664, 668 (D.R.I. 2018); see Catherine I. v. Saul, C.A. No. 19-394WES, 2020 WL 2730907, at *9 (D.R.I. May 26, 2020).

### D. Claimant's Subjective Statements

A reviewing court will not disturb a clearly articulated credibility finding based on substantial supporting evidence in the record. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). It directs the ALJ to consider the entire case record, including the objective medical evidence, the individual's statements, statements and other information provided by medical sources and other persons, and any other relevant evidence, as well as whether the subjective statements are consistent with the medical signs and laboratory findings. Id. at *4. As the First Circuit recently emphasized, in the absence of direct evidence to rebut a claimant's testimony about subjective symptoms, such statements should be taken as true. Sacilowski, 959 F.3d at 441; Tegan S. v. Saul, 546 F. Supp. 3d 162, 169 (D.R.I. 2021). That is, if proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, the subjective statements must either be explicitly discredited or the implication of lack of credibility must be so clear as to amount to a specific credibility finding. Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995); Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *4 (D.R.I. Sept. 2, 2021), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021).

### III. Background and Analysis

Plaintiff's challenge to the ALJ's decision is principally focused on his analysis of the mental health opinions and administrative findings.[3]  The ALJ's mental RFC, which resulted in the conclusion of "not disabled," is based on the administrative findings of the non-examining expert psychologists, Dr. Michelle Olson at the initial phase and Dr. Albert Hamel on reconsideration.  The ALJ did not rely on the post-file review opinions of Plaintiff's treating psychiatrist (Dr. Monissa Solberg) and her treating case manager (Ms. Ekatrina Ildeykina), finding both to be unpersuasive.  Plaintiff contends that the ALJ erred in finding persuasive the administrative findings of the non-examining psychologists because, post-file review, Plaintiff continued medical treatment and obtained a new psychological evaluation performed by Gershon Psychological Associates on November 19, 2020, Tr. 1484-1501, resulting in almost 800 pages of material that the non-examining psychologists did not see.  She also challenges the ALJ's rejection of the treating source opinions of Dr. Solberg and Ms. Ildeykina, arguing error because the ALJ performed an "overly broad analysis of the record" without appropriate consideration of the evidence that Plaintiff's physical and mental health complaints are "intricately intertwined."  ECF No. 10-1 at 13.  Based on the analysis that follows and finding that the post-file review records are medically complex, not susceptible of lay analysis from a mental health perspective, as well as that they are arguably supportive of and consistent with the Solberg opinion, the Court remands the case for further proceedings, this time with the assistance of a medical expert qualified to interpret them.

---

[3] From a physical perspective, Plaintiff's application is supported by a massive medical record reflecting wide-ranging and potentially very serious complaints, resulting in frequent referrals to an array of medical specialists and many trips to the emergency room.  However, as Plaintiff essentially concedes, during the relevant period, except for fibromyalgia and obesity (which the ALJ accepted as severe), none resulted in a potentially disabling physical diagnosis.  There are no opinions supporting physical limitations greater than those reflected in the ALJ's RFC.  The Court's review of the medical records (every page of which was examined) turned up nothing to cause it to question "whether the non-examining state agency physicians would have rendered the same . . . opinions if they had all of the medical evidence."  Mary K, 317 F. Supp. 3d at 668.  There is no error tainting the ALJ's physical RFC finding.

7

The medical record reviewed by the non-examining experts, Dr. Olson and Dr. Hamel, totals approximately 425 pages of material; their work was completed with the signing of the reconsideration findings on February 25, 2020. Both of these psychologists found that Plaintiff is only mildly limited in her ability to understand and remember and is moderately limited in her ability to interact with others, to concentrate, persist and maintain pace and to adapt. Tr. 120-21, 130. They specifically found that Plaintiff's ability to carry out not just simple, but even detailed instructions and her capacity to maintain regular attendance is not significantly limited. Tr. 123, 133. The ALJ found these findings to be "supported with the evidence of record up to that point." Tr. 20. The ALJ next performed his own lay assessment of the approximately 800 pages of post-file-review evidence; his decision contains a detailed description of this material. Tr. 18-19. The fruit of this assessment is reflected in the decision's unadorned determination that the findings of the non-examining psychologists are "consistent with the overall medical record." Tr. 20. To support this determination, the ALJ relies on his finding that Plaintiff had "consistently . . . normal to benign mental status exams."[4] Id. Based on this determination, the ALJ relied on the non-examining psychologists' findings to develop the mental-health-based limitations in his RFC.

The first and largest tranche of material that the non-examining psychologists did not see are the voluminous records reflecting Plaintiff's increasingly intense complaints of serious

---

[4] The ALJ also purported to rely on a second finding based on the treating notes of the case manager, Ms. Ildeykina. Specifically, the ALJ found that Plaintiff told her case manager that "her issues were mainly related to her medical problems." Tr. 20. This finding – that Plaintiff herself conceded that her mental health issues are *de minimis* – clashes with Plaintiff's hearing testimony, during which she emphatically, unambiguously and repeatedly stated that her "anxiety is probably like #1" as the reason for her inability to work. Tr. 42, 58-59. Further, the case manager's notes on which the ALJ relies for this finding are actually consistent with the proposition that Plaintiff's mental health is impacted by her perceived medical issues, not that her mental health impairments do not impact her. See Tr. 735-36. This finding does not supply support for the ALJ's approach to the post-file-review material.

physical symptoms resulting in repeated trips to the emergency room[5] (more than eight times, several times almost back-to-back for the same symptoms that she had already been told were not acute) and multiple referrals to see specialists (a physician assistant in gastroenterology, an obstetrician, a nephrologist, a cardiologist, a neurologist, an ophthalmologist and a rheumatologist), none of which, as Plaintiff concedes, resulted in any material physical findings. See ECF No. 10-1 at 14. However, during many of these interactions, providers recorded observations that Plaintiff presented as a "very anxious and distressed young woman." Id.; see, e.g., Tr. 895 (patient "seems fixated that there is something wrong with her arm"; no findings on examination); Tr. 905 (patient observed to be anxious, tearful and upset despite no findings to explain extreme physical symptoms); Tr. 915 (patient observed to be in moderately acute distress despite no acute physical findings). Plaintiff contends that these records expose a pattern of maladaptive behavior that would have resulted in many absences from work if Plaintiff had been working, which the non-examining psychologists were unaware of and the ALJ simply ignored.[6] See Sacilowski, 959 F.3d at 436 (remand due to error based in part on RFC assessment that did not specifically assess issue of absenteeism).

A second potentially significant item in the post-file-review record is the Gershon report. In contrast to the non-examining psychologists' finding that Plaintiff had only mild cognitive limitations, the Gershon psychological evaluation resulted in potentially more limiting test scores and observations, including low average IQ and significant difficulties with attention, concentration, executive function, depression and anxiety; in some of the functional areas tested

---

[5] For example, during just one month, February 2020, Plaintiff was a "walk-in" to the emergency room four times, each resulting in same-day discharge and, except for mental distress, mostly benign or non-acute findings on diagnostic testing and examination. Tr. 890-939.

[6] The ALJ scoured these records for potential physical impairments, correctly finding that there are none. This approach misses the point – Plaintiff's argument is that these records reflect mental health impairments.

by the Gershon psychologists, Plaintiff scored in the borderline range. Tr. 1486, 1492-93. Yet the ALJ's lay analysis of the complex findings in the Gershon report – focused on its relatively normal mental status observations and its average "General Ability Index" – resulted in his lay conclusion that it is "consistent" with the findings of the non-examining psychologists. Tr. 20.

The last significant post-review record reflects Plaintiff's ongoing treatment with Dr. Solberg, as well as Dr. Solberg's nuanced opinion regarding Plaintiff's limitations.[7] The Solberg opinion is consistent with the non-examining psychologists in some respects in that she opined that Plaintiff is moderately impaired in some functions. However, there is a material conflict between her opinion and those of the non-examining psychologists in that Dr. Solberg opines that Plaintiff has "moderately severe" limitations in her ability to engage in daily activities, respond to work pressures and perform varied tasks, as well as that Plaintiff's impairments would cause her to miss work between two and three days a month. Tr. 1480-82. The latter limitation is outcome determinative in that the vocational expert testified that a pattern of missing two days of work per month on an ongoing basis would not be tolerated by employers and would preclude all work. Tr. 69.

Primarily focused on the latter finding, the ALJ rejected Dr. Solberg's opinion as unpersuasive because "claimant's mental health treatment records do not show such extenuating symptoms as to support a finding that they would cause her to miss work this much." Tr. 21. The problem is that the ALJ ignored Plaintiff's behavior in repeatedly going to the emergency

---

[7] Post-file review, Plaintiff also obtained an opinion from and continued treatment with Ms. Ildeykina, whose mental status findings, as the ALJ correctly noted, are consistent with those she recorded during the earlier period. The ALJ found Ms. Ildeykina's opinion to be unpersuasive because it clashes with the balance of the medical record, including Ms. Ildeykina's own notes. For example, Ms. Ildeykina opined that Plaintiff is severely impaired in her ability to perform even simple tasks, yet Ms. Ildeykina's mental status observations – both pre- and post-file review – consistently reflect coherent thought, intact memory, accurate fund of knowledge and average intellectual functioning. Tr. 334, 578, 737. Ms. Ildeykina's findings of severe limitations in every functional area also clash with the more nuanced opinion of Dr. Solberg, the treating psychiatrist. Compare Tr. 1192-94, with Tr. 1480-82. The Court finds no error in the ALJ's finding that Ms. Ildeykina's opinion is unpersuasive.

room and to specialist appointments based on extreme but largely unfounded physical complaints; this pattern is more than enough to support Dr. Solberg's finding. That this is potentially a mental health issue is also supported by other references of record. See Tr. 735 (case manager notes that "client cannot manage all of her appointments and work even part time"); Tr. 895 (emergency room provider notes that Plaintiff "seems fixated that there is something wrong" and refers her to social work for assessment); Tr. 1199 (Plaintiff's primary care physician notes Plaintiff's many specialist referrals and opines that Plaintiff "[b]enefits from frequent appointments."). To the Court's untutored eye, the post-file-review record may well support Dr. Solberg's opinion of greater limitations, including that Plaintiff's seeming stream of serious physical complaints resulting in frequent medical appointments may well have a mental-health-based explanation that, in turn, supports Dr. Solberg's opinion that Plaintiff will miss two or more days from work a month.

The Court cannot resolve these issues. Brown, 71 F. Supp. 2d at 31. Rather, with nothing in this dense and complex portion of the record seen by the file-reviewers, it was error for the ALJ to have relied exclusively on their findings to support his RFC. Based on the foregoing, the Court resolves this case in reliance on the well-settled proposition that remand is required when "'the state-agency physicians were not privy to parts of [plaintiff's] medical record [which] detracts from the weight that can be afforded their opinions.'" Andrea T. v. Saul, C.A. No. 19-505WES, 2020 WL 2115898, at *5-7 (D.R.I. May 4, 2020) (quoting Virgen C., 2018 WL 4693954, at *2-3) (alterations in original). By deciding not to call a medical expert, the ALJ improperly deployed his lay judgment as the interpretative tool to analyze the medically complex and conflict-ridden post-file review records. Andrea T., 2020 WL 2115898, at *5. This was not a matter of a common-sense comparison of the pre- and post-file-review material.

Rather, a medical expert was required to interpret what was really going on. Sanford v. Astrue, No. CA 07-183 M, 2009 WL 866845, at *8 (D.R.I. Mar. 30, 2009); see Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007) (per curiam) ("Absent a medical advisor's or consultant's assessment of the full record, the ALJ effectively substituted his own judgment for medical opinion.").

Before closing, the Court pauses to consider Plaintiff's argument that the ALJ erred in discounting Plaintiff's subjective claim that she spends most of every day in bed watching television because of the absence of evidence to directly rebut it. This is not accurate; for example, the record includes evidence of a directly contradictory statement to a treating source that "she has a 10 yr old step son who she cares for during the week," Tr. 1131, as well as the consistent observation noted in many physical examinations of her normal mobility, gait and station, Tr. 20 (referencing, e.g., Tr. 654, 682-83, 695, 706.). Nor does the argument make sense in the context of this case where Plaintiff contends that her disabling mental health limitations result in part from her perception (at odds with reality), and inaccurate reports to treating sources, of extreme physical symptoms. Indeed, the record is rife with Plaintiff's subjective reports of symptoms (such as body twitching, tremors and swelling) that were not confirmed on physical examination. E.g., Tr. 1447, 1449 (Plaintiff complains of tremors and facial twitching; on examination, "[n]o involuntary movements or tremor noted"); compare Tr. 54 ("my foot is swollen after even doing a little bit"), with Tr. 1511 ("Normal range of motion . . . No swelling"). Based on this evidence, the Court finds that the ALJ's credibility finding is amply supported by substantial evidence.

**IV.     Conclusion**

Based on the foregoing analysis, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) is GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13) is DENIED.  Therefore, the Clerk shall enter Final Judgment in favor of Plaintiff, reversing the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g) and remanding this matter for further administrative proceedings.  On remand, the ALJ shall procure the assistance of a mental health expert to consider the Solberg opinion and to analyze the entirety of the medical record, including the post-file-review record, from a mental health perspective.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 16, 2022